1  ARIEL E. STERN, ESQ.
   Nevada Bar No. 8276
2  JACOB D. BUNDICK, ESQ.
   Nevada Bar No. 9772
3  CHRISTINA S. BHIRUD, ESQ.
   Nevada Bar No. 11462
4  AKERMAN SENTERFITT LLP
   400 South Fourth Street, Suite 450
5  Las Vegas, Nevada 89101
   Telephone:   (702) 634-5000
6  Facsimile:   (702) 380-8572
   ariel.stern@akerman.com
7  jacob.bundick@akerman.com
   christina.bhirud@akerman.com
8
9  *Attorneys for Defendants BAC Home*
   *Loans Servicing, LP, incorrectly sued as*
   *Bank of America Home Loans Servicing, LP;*
10 *Recontrust Company, N.A., incorrectly sued*
   *as ReconTrust Company; Mortgage Electronic*
11 *Registration Systems, Inc.; and MERSCORP, Inc.*

12

13                **UNITED STATES DISTRICT COURT**

14                     **DISTRICT OF NEVADA**

15

16  Mark A. Adair, an individual,            Case No.:  2:11-cv-00519-GMN -RJJ

17                       Plaintiff,          **MOTION TO DISMISS**

18       v.

19  BANK   OF   AMERICA   HOME   LOANS
    SERVICING,   LP;   RECONTRUST   CO.;
20  MERSCORP,   INC.,   a   Virginia   Corporation,
    MORTGAGE ELECTRONIC REGISTRATION
21  SYSTEMS, INC., a subsidiary of MERSCORP,
    Inc., a Delaware corporation; AND DOES I
22  individuals 1 to 100, Inclusive; and ROES
    Corporations 1 to 30, Inclusive; and all other
23  persons and entities unknown claiming any right,
    title, estate, lien or interest in the real property
24  described in the Complaint adverse to Plaintiff's
    ownership, or any cloud upon Plaintiff's title
25  thereto,

26                       Defendants.

27       Defendants BAC Home Loans Servicing, LP, incorrectly sued as Bank of America Home

28

{LV027126;1}                              1

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1  Loans Servicing, LP ("BAC"); ReconTrust Company, N.A., incorrectly sued as ReconTrust Co.

2  ("ReconTrust"); Mortgage Electronic Registration Systems, Inc. ("MERS"); and MERSCORP, Inc.

3  ("MERSCORP" and, collectively with BAC, ReconTrust and MERS, "BAC Defendants") move

4  pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff Mark A. Adair's Complaint.  This Motion is

5  based on the pleadings and papers on file herein, the Memorandum of Points and Authorities below,

6  and any oral argument this Court should entertain.

7  **MEMORANDUM OF POINTS AND AUTHORITIES**

8  **I.**

9  **INTRODUCTION**

10  This is yet another lawsuit in which a defaulting borrower attempts to avoid the

11  consequences of his failure to fulfill his loan obligations.  In this case, Plaintiff alleges that the

12  Defendants fraudulently induced him into his loan and were unjustly enriched as a result.  In

13  addition, Plaintiff alleges a nebulous industry-wide conspiracy to make fraudulent loans, as well as a

14  conspiracy related to use of the MERS system.  Further, Plaintiff contends that BAC Defendants

15  lack standing to foreclose and that BAC Defendants wrongfully denied him for a loan modification.

16  Plaintiff's causes of action fail to state a claim upon which relief can be granted, or are based

17  on inapplicable statutes or duties that do not exist under Nevada law.  In particular, many of

18  Plaintiff's claims are barred by the applicable statutes of limitations, are improperly pled, or relate to

19  alleged wrongdoing at origination, before any of the BAC Defendants was involved with the subject

20  loan.

21  This Court has already rejected similar allegations and claims in *Lopez v. Exec. Trustee*

22  *Servs.*, Case No. 3:09-cv-180, slip op. (D. Nev. Jan. 13, 2010) (attached hereto as **Exhibit A**);

23  *Goodwin v. Exec. Trustee Servs.*, 3:09-cv-00306-ECR, slip op. (D. Nev. Dec. 2, 2010) (attached

24  hereto as **Exhibit B**); *Green et al. v. Countrywide Home Loans, Inc., et al.*, No. 3:09-cv-00374-BES,

25  slip op. (D. Nev. July 30, 2010) (attached hereto as **Exhibit C**); *Dalton, et al. v. Countrywide*

26  *Financial Servs., Inc. et al.*, No. 3:09-cv-00534-LDG-VPC, slip op. (D. Nev. Jan. 21, 2011)

27  (attached hereto as **Exhibit D**); *Duncan v. Countrywide Home Loans, Inc.*, No. 3:09-cv-00632-RCJ-

28

VPC, slip op. (D. Nev. Dec. 28, 2010) (attached hereto as **Exhibit E**); *Sieben v. Countrywide Home Loans, Inc.*, No. 3:09-cv-00642-RCJ-VPC, slip op. (D. Nev. Dec. 28, 2010) (attached hereto as **Exhibit F**); and *Hearne v. Countrywide Home Loans, Inc.*, 3:08-CV-0500-ECR-RAM, 2010 WL 1815424 (D. Nev. Apr. 30, 2010). Judge James A. Teilborg of the District of Arizona, who presides over the multi-district litigation proceeding dealing with these matters, has also rejected similar claims in related cases. *See In re Mortg. Elec. Registration Sys. (MERS) Litig.*, No. 2:09-MD-02119-JAT, 2011 WL 251453, at *5 (D. Ariz. Jan. 25, 2011); *In re Mortg. Elec. Registration Sys. (MERS) Litig.*, No. 2:09-MD-02119-JAT, 2010 WL 4038788, at *8 (D. Ariz. Sept. 30, 2010); *Cervantes v. Countrywide Home Loans, Inc.*, No. CV 09-517-PHX-JAT, 2009 WL 3157160 (D. Ariz. Sept. 24, 2009), appeal pending, No. 09-17364; and *Ciardi v. Lending Co., Inc.*, No. CV 10-0275-PHX-JAT, 2010 WL 2079735 (D. Ariz. May 24, 2010). This Court should not reach a different result here.

## II.

## STATEMENT OF FACTS

**A.  Plaintiff Borrowed $570,000.00 from GreenPoint Mortgage Funding, Inc. and Secured the Loan with a Deed of Trust**

On March 12, 2001, Plaintiff purchased the vacant property located at 1401 Marbella Ridge Court, Las Vegas, Nevada 89117, Parcel No. 163-03-213-007. *See* Grant, Bargain, Sale Deed, **Exhibit G**.[1] Subsequently, on January 16, 2002, Plaintiff borrowed $325,000.00 from Washington Mutual Bank, FA to erect improvements on the property. *See* 2002 Deed of Trust, **Exhibit H**. Plaintiff secured the $325,000.00 loan with a deed of trust encumbering the property. *See id.*

The next year, on September 18, 2003, Plaintiff refinanced the property by obtaining a 320,000.00 loan from Independent Realty Capital Corporation. *See* 2003 Deed of Trust, **Exhibit I**. Plaintiff secured the $320,000.00 loan with a deed of trust against the property. *See id.* A few

---

[1] BAC Defendants respectfully request judicial notice of the attached deed, deeds of trust and foreclosure notices. *See* Exhibits G-Q. Under Federal Rule of Evidence 201, a court may judicially notice matters of public record. *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), abrogated on other grounds by *Astoria Federal Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). The deed, deeds of trust, and foreclosure notices should be judicially noticed because they are of public record in the Clark County Recorder's office.

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

weeks later, on October 6, 2003, Plaintiff also obtained a $50,000.00 line of credit from Independent Realty Capital Corporation.  *See* 2003 Deed of Trust (Line of Credit), **Exhibit J**.  The $50,000.00 line of credit was secured by a second position deed of trust encumbering the property.  *See id.*

On May 13, 2004, Plaintiff again refinanced, this time by obtaining a $570,000.00 loan from GreenPoint Mortgage Funding, Inc.  *See* Foreclosing Deed of Trust, **Exhibit K**.[2]  The $570,000.00 loan was secured by a deed of trust ("Foreclosing Deed of Trust") against the property.  *See id.*  Also on May 13, 2004, Plaintiff obtained a $190,000.00 Home Equity Line of Credit from GreenPoint Mortgage Funding, Inc.  *See* 2004 HELOC, **Exhibit L**.  The $190,000.00 Home Equity Line of Credit was secured by a second position deed of trust encumbering the property.  *See id.*

The Foreclosing Deed of Trust lists MERS as the beneficiary and nominee of the lender.  *See* Ex. K, p. 2.  The Foreclosing Deed of Trust also states:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successor and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Ex. K, p. 3-4.  The Foreclosing Deed of Trust permits the lender to appoint a substitute trustee thereunder.  *See Id.* ¶ 24.  Further, the Foreclosing Deed of Trust allows the lender to foreclose on the property if Plaintiff does not make his loan payments.  *Id.* ¶ 22.  BAC subsequently began servicing Plaintiff's $570,000.00 loan.

**B.     Plaintiff Defaulted on His Loan and BAC Defendants Began Non-Judicial Foreclosure**

Plaintiff stopped making his mortgage payments.  On March 16, 2010, MERS assigned the Foreclosing Deed of Trust to GreenPoint Mortgage Funding, LLC.  *See* Corporation Assignment of Deed of Trust Nevada, **Exhibit M**.  That same day, GreenPoint Mortgage Funding, LLC substituted ReconTrust as the trustee under the Foreclosing Deed of Trust.  *See* Substitution of Trustee Nevada, **Exhibit N**.  Because of Plaintiff's default, ReconTrust recorded a Notice of Default/Election to Sell

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

---

[2]    Plaintiff incorrectly maintains that this document was executed and recorded on August 3, 2006.  *See* Compl., p. 4.

1   under Deed of Trust on March 17, 2010.  *See* Notice of Default, **Exhibit O**.

2        In addition to defaulting on his mortgage loan, Plaintiff, upon information and belief, stopped

3   paying his Homeowners' Association assessments.  *See* Notice of Lien, **Exhibit P**.  Accordingly, on

4   April 20, 2010, Plaintiff's Homeowners' Association recorded a Notice of Delinquent Assessment

5   (Lien) against the property.  *See id.*

6   **C.    Plaintiff Filed a Deficient Complaint Nearly Seven Years After Signing the Loan**

7        **Documents**

8        On February 7, 2011, Plaintiff filed his Complaint alleging twelve claims for relief that

9   include:  (1) Violations of Unfair Lending Practices—NRS 598D; (2) Deceptive Trade Practices; (3)

10  Wrongful Foreclosure; (4) Conspiracy to Commit Fraud and Conversion; (5) Conspiracy to Commit

11  Fraud Related to MERS System; (6) Inspection and Accounting; (7) Unjust Enrichment; (8) Quiet

12  Title; (9) Breach of Good Faith and Fair Dealing; (10) Injunctive Relief; (11) Declaratory Relief;

13  and (12) Rescission.  On February 28, 2011, Plaintiff also recorded a *lis pendens* on the property

14  (Clark County Recorder, Doc. No. 201102280001513).  *See* Notice of Lis Pendens, **Exhibit Q**.

15       Plaintiff's claims either fail as a matter of law or warrant dismissal.  Indeed, the Complaint

16  fails to plead sufficient factual allegations to establish the necessary elements of the claims against

17  BAC Defendants.  The Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for

18  failure to state a claim upon which relief can be granted.

19                              **III.**

20                       **LEGAL STANDARD**

21       The standard of review applicable to a motion to dismiss under Rule 12(b)(6) is familiar;

22  however, the Supreme Court has clarified the standard in significant ways.  Rule 8(a)(2) requires that

23  the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to

24  relief."  *See* Fed. R. Civ. P 8(a)(2).  According to the Supreme Court in *Ashcroft v. Iqbal*, 129 S.Ct.

25  1937 (2009), "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'

26  but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at

27  1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A pleading that offers 'labels

28

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1   and conclusions' or 'a formulaic recitation' of the elements of a cause of action will not do." *Id.*

2   (quoting *Twombly*, 550 U.S. at 555).

3         A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual

4   enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). To "survive a motion to dismiss, a

5   complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is

6   plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "[O]nly a complaint that states a

7   plausible claim for relief survives a motion to dismiss." *Id.* (quoting *Twombly*, 550 U.S. at 556).

8   Factual allegations are assumed true, but the court is "not bound to accept as true a legal conclusion

9   couched as a factual allegation." *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 555); *see also Clegg

10  v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

## IV.

## LEGAL ARGUMENT

### A.   MERSCORP Is Improperly Named as a Defendant

14        MERSCORP is MERS' corporate parent. *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521,

15  524 (D.Del. 2008). MERSCORP was uninvolved in the subject loan transaction and is not the

16  beneficiary under the Foreclosing Deed of Trust. Accordingly, MERSCORP is not a proper party to

17  this lawsuit.

18        To hold MERSCORP liable for the acts of MERS, Plaintiff would have to "pierce the

19  corporate veil." "It is a general principle of corporate law deeply 'ingrained in our economic and

20  legal systems' that a parent corporation (so-called because of control through ownership of another

21  corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S.

22  51, 61 (1998) (citations omitted). Nevertheless, "the corporate veil may be pierced and the

23  shareholder liable for the corporation's conduct when, *inter alia*, the corporate form would otherwise

24  be misused to accomplish certain wrongful purposes." *Id.* at 62 (citations omitted). The elements of

25  veil piercing in Nevada are: (1) the corporation is influenced and governed by the stockholder

26  asserted to be its alter ego; (2) there is such unity of interest and ownership that the corporation and

27  the stockholder are inseparable from each other; and (3) adherence to the corporate fiction of a

28

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL. (702) 634-5000 – FAX: (702) 380-8572

separate entity would sanction fraud or promote a manifest injustice. *Basic Mgmt. Inc. v. United States*, 569 F. Supp. 2d 1106, 1117 (D. Nev. 2008) (citing Nev. Rev. Stat. § 78.747).

Plaintiff's Complaint neither addresses nor establishes any of the relevant elements needed to pierce the corporate veil, nor could it. MERSCORP is not a proper party to this litigation and should be dismissed.

**B.    Plaintiff's Unfair Lending Practices Act Claim Fails as a Matter of Law against BAC Defendants for Multiple Reasons**

**1.    Plaintiff's ULPA Claim is Time-Barred**

Plaintiff's First Cause of Action alleges a violation of the Unfair Lending Practices Act, NRS Ch. 598D (the "ULPA"). The statute of limitations for a ULPA claim is three years. *See* NRS § 11.190(3)(a) (actions for liability founded upon a statute are subject to a three-year statute of limitations). Plaintiff signed his loan documents in May of 2004, at which point Plaintiff was in possession of the facts giving rise to the asserted cause of action. Under the applicable 2003 version of the ULPA, a lender committed an unfair lending practice by approving a loan based solely on the equity in the property without considering the borrower's ability to repay. Plaintiff would have known prior to closing whether he provided documents confirming assets, liabilities, income and employment. The Complaint fails to provide any basis to conclude Plaintiff could not reasonably have discovered the alleged violation in May of 2004. Plaintiff waited until February 7, 2011 to file this Complaint, nearly seven years later. Plaintiff's First Cause of Action is time-barred.

**2.    BAC Defendants Did Not Originate Plaintiff's Loan**

As set forth above, Plaintiff's ULPA claim is time-barred. Even if it were not, this claim fails as a matter of law against BAC Defendants. The ULPA mainly deals with potential wrongdoing at the time the loan was originated. In fact, the applicable 2003 version of the ULPA made it unlawful to:

> Knowingly or intentionally make a home loan to a borrower based solely upon the equity of the borrower in the home property and without determining that the borrower has the ability to repay the home loan from other assets, including, without limitation, income.

None of the BAC Defendants was involved with originating Plaintiff's loan—the original

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL. (702) 634-5000 – FAX: (702) 380-8572

lender was GreenPoint Mortgage Funding, Inc.  Moreover, Plaintiff does not allege that the BAC Defendants violated any other provisions of NRS §598D(1).  He does not allege that the BAC Defendants required him to provide property insurance in an amount that exceeds the reasonable replacement value of the improvements.  *See* Compl. ¶¶ 31-35.  Similarly, he does not allege that the BAC Defendants financed a prepayment fee or penalty in a refinance transaction or that BAC Defendants financed any credit insurance.  *See id.*  The allegations Plaintiff does include against the BAC Defendants are simply not violations of the ULPA.  *See id.*  Thus, Plaintiff fails to state a ULPA claim against the BAC Defendants.

### 3. The 2003 ULPA Applied Only to High Cost, Refinance Loans, And Is Therefore Inapplicable

Plaintiff's ULPA claim also fails because Plaintiff's loan is not subject to the statute.  The 2003 version of the ULPA, which applies to Plaintiff's 2004 loan, defined a "home loan" as a "consumer credit transaction" that (1) "is secured by a mortgage loan which involves real property located within [Nevada]" and (2) "[c]onstitutes a mortgage under §152 of the Home Ownership and Equity Protection Act of 1994" ("HOEPA") and the regulations adopted pursuant to HOEPA, including 12 C.F.R. §226.32.  NRS § 598D.040 (2005).

Plaintiff's loan was not a "home loan" under the 2003 ULPA unless it was a "mortgage" under HOEPA.  HOEPA's definition of "mortgage" is very limited and includes only certain specialized loans.  Section 152 of HOEPA defines a "mortgage" in pertinent part as "a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction . . ." in which either "the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor" or "the total point and fees payable by the consumer at or before the closing will exceed the greater of (i) 8 percent of the total loan amount; or (ii) $400."  15 U.S.C. §1602 (aa)(1); 12 C.F.R. §226.32(a)(1).  A "residential mortgage transaction" is "a transaction in which a . . . deed of trust . . . is created or retained in the

consumer's principal dwelling to finance the acquisition or initial construction of that dwelling." Reg. Z §226.2(a)(24).

Plaintiff baldly asserts that his loan was a "home loan" under NRS 598D. *See* Compl., ¶ 29. Plaintiff's conclusory assertion that his loan is governed by the ULPA is exactly the type of pleading the Supreme Court disapproved in *Iqbal*. *See Iqbal*, 129 S. Ct. 1949-50 (conclusory allegations not entitled to presumption of truth). This is fatal to Plaintiff's ULPA claim because the ULPA's 2007 amendment, which expanded the scope of the ULPA, cannot be applied retroactively. *See U.S. v. Perry*, 431 F.2d 1020, 1023 (9th Cir. 1970) (statutes are presumed to operate only prospectively). In *Velasquez v. HSBC Mortgage Servs.*, this Court held that a case commenced in 2009 based on a 2005 loan was subject to the law as it existed in 2005, not as amended in 2007. Case No. 2:09-cv-784-KJD-LRL, 2009 WL 2338852, at *3-4 (D. Nev. July 24, 2009). It held the 2005 language applied, and dismissed the claim because the loan was not within the statute when originated. *Id.* at *4; *accord Aguilar v. WMC Mtg. Corp.*, Case No. 2:09-cv-1416-ECR-PAL, 2010 WL 185951, at *5-6 (D. Nev. Jan. 15, 2010). The Court should follow its precedents by dismissing Plaintiff's ULPA claim.

## C.   Plaintiff's Unfair Trade Practices Claim Fails as a Matter of Law

Plaintiff's Second Cause of Action is for "Deceptive Trade Practices." In particular, Plaintiff asserts that the BAC Defendants violated NRS §§ 598.0923 (1) and (3). These provisions provide:

> A person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she knowingly:
>
> 1.  Conducts the business or occupation without all required state, county or city licenses.
>
>                              . . .
>
> 3.  Violates a state or federal statute or regulation relating to the sale or lease of goods or services.

Plaintiff does not identify what licenses the BAC Defendants allegedly failed to obtain. Plaintiff also does not explain what action by the BAC Defendants is related to "the sale or lease of goods or services" as required for NRS § 598.0923 (3) to apply.[3] None of the allegations in the

---

[3]   Plaintiff does not allege any conduct that would violate NRS §§ 598.0923 (1) and (3). Rather, Plaintiff alleges that he did not receive notice that the loan could be assigned, sold, or transferred, and that improper fees and

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET , SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1   Complaint even suggest that the BAC Defendants sold or leased goods or services to Plaintiff.

2   Plaintiff's Second Cause of Action fails because NRS §§ 598.0923 (1) and (3) do not apply to non-

3   judicial foreclosure of Plaintiff's real property.

4   **D.    Plaintiff's Wrongful Foreclosure Claim Fails Because There Is no Completed Sale, Plaintiff Breached the Loan Agreement, and Plaintiff Has Not Complied With The**

5   **Tender Rule**

6   Plaintiff's wrongful foreclosure claim fails because it does not allege a foreclosure sale or that

7   Plaintiff was not in default. *See* Compl., ¶¶ 45-49.  To succeed on a claim for wrongful foreclosure,

8   Plaintiff must show that (1) BAC Defendants exercised a power of sale or foreclosed on Plaintiff's

9   property and (2) at the time the power of sale was exercised, there was no breach of condition or

10  failure of performance by Plaintiff that would have authorized the foreclosure or exercise of power

11  of sale.[4]  *Collins v. Union Fed. Sav. & Loan Ass'n*, 99 Nev. 284, 304, 662 P.2d 610, 623 (1983).

12  Plaintiff's Complaint necessarily fails under this standard, as the power of sale has not been

13  exercised against the property in this case, and Plaintiff cannot show that he has not breached the

14  loan contract.

15  **1.    Plaintiff's Claim Is Premature as no Foreclosure Sale Has Occurred**

16  Initially, it is axiomatic under Nevada law that the tort of wrongful foreclosure is available

17  only when "the power of sale was exercised" and a "foreclosure occurred." *See Haley v. Elegen*

18  *Home Lending, LP*, Case No. 3:10-cv-00046-LRH-RAM, 2010 WL 1006664, at *1-2 (D. Nev. Mar.

19

20  kickbacks were paid in connection with settlement of the loan.  *See* Compl. p. 8-9.  In making these claims, Plaintiff appears to be arguing that Defendants violated 12 U.S.C. §§ 2605(a) and 2607(a), respectively.  These claims, which

21  arise under the federal Real Estate Settlement Procedures Act ("RESPA"), cannot be asserted against the BAC Defendants, as they both relate to alleged violations at closing, and no BAC Defendant was involved in the loan until

22  well after closing.  Moreover, even if Plaintiff had properly pled a RESPA claim and could allege any settlement or closing violations against the BAC Defendants, that claim would be time-barred.  Indeed, claims under 12 U.S.C. § 2605

23  must be brought within three (3) years of the alleged violation, and claims under 12 U.S.C. § 2607 must be brought within one (1) year of the alleged violation.  *See* 12 U.S.C. § 2614.  Plaintiff's loan was originated nearly seven (7) years

24  before he commenced this action.  Thus, even if he had or could state a RESPA claim, that claim would be barred by the statute of limitations.

25     [4]  *See also Cilluffo v. Wash. Mutual*, Case No. C09-02518 HRL, 2010 WL 431896, at *3 (N.D. Cal. Feb. 2, 2010) ("Claims for wrongful foreclosure have been found premature where there has . . . not yet been a sale."); *Santos v.*

26  *Countrywide Home Loans, Inc.*, Case No. Civ. 2:09-02642 WBS DAD, 2009 WL 3756337, at *3 (E.D. Cal. Nov. 6, 2009) (noting that "'there is no cause of action for 'wrongful threatened foreclosure'"); *Swanson v. EMC Mortg. Corp.*,

27  Case No. CV F-09-1507 LJO DLB, 2009 WL 3627925, at *12 (E.D. Cal. Oct. 29, 2009) ("In the absence of a foreclosure sale, [defendants] cannot be liable for 'wrongful foreclosure.'"); *Vega v. JPMorgan Chase Bank, N.A.*, 654 F. Supp. 2d

28  1104, 1113 (E.D. Ca. 2009).

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

16, 2010) ("A claim for wrongful foreclosure does not arise until the power of sale is exercised."). Plaintiff has not alleged that a foreclosure sale has occurred on the property. Thus, Plaintiff's wrongful foreclosure claim is premature and fails because speculative future acts cannot form the predicate of an actual case or controversy for adjudication.[5]

### 2. Plaintiff Additionally Fails To Allege Absence of a Default in Loan Payments

A wrongful foreclosure action will not lie in Nevada unless the plaintiff pleads that "no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale." *Collins*, 99 Nev. at 304, 662 P.2d at 623. Thus, the "material issue" in a wrongful foreclosure claim is whether "the trustor was in default when the power of sale was exercised," and wrongful foreclosure claims have therefore been dismissed when plaintiffs fail to allege that they do not owe money on their loan, *i.e.*, that they were not "in default when the power of sale was exercised." *Collins*, 99 Nev. at 304, 662 P.2d at 623; *see also Haley*, 2010 WL 1006664, at *1-2 (noting that "[a]n action for wrongful foreclosure requires that, at the time of the foreclosure sale, the plaintiff was not in breach of the mortgage contract"); *Aguilar*, 2010 WL 185951, at *2 (dismissing claim because plaintiffs "admit[ted] that they were delinquent"); *Larson v. Homecomings Fin., LLC*, Case No. 2:09-cv-01015-RLH-GWF, 2009 WL 5538536, at *5 (D. Nev. Sept. 1, 2009) (same); *Spracklin v. CR Title Co.*, Case No. 3:10-cv-267-RCJ-VPC, slip op. at 4 ("Under Nevada law, Plaintiff cannot sustain a cause of action for wrongful foreclosure is [sic] the Plaintiff is in default.") (attached at **Exhibit R**).[6]

This same claim was rejected by this Court in *Green v. Countrywide Home Loans, Inc. See* Case No. 3:09-cv-374, slip op. at 4 (D. Nev. Jan. 12, 2010) (holding that plaintiffs failed to state a claim for wrongful foreclosure because they failed to allege that they were not in default on their

---

[5] *See Buzz Stew, LLC, v. City of N. Las Vegas*, 181 P.3d 670, 674 (2008) (citing *Doe v. Bryan*, 102 Nev. 523, 525, 728 P.2d 443, 444 (1986)).

[6] *See also Ernestberg v. Mortg. Investors Group*, Case No. 2:08-cv-1304-RCJ-RJJ, 2009 WL 160241, at *6 (D. Nev. Jan. 22, 2009) ("Plaintiff does not contest that he defaulted on the loan"); *Coward v. First Magnus Financial Corp.*, Case No. 2:09-cv-01143-RCJ-GWF, 2009 WL 3367398, at *9 (D. Nev. Oct. 14, 2009) ("Plaintiff has admitted default"); *see also Labra v. Cal-Western Reconveyance Corp.*, Case No. C 09-2537 PJH, 2010 WL 889537, at *9 (N.D. Cal. Mar. 11, 2010) (dismissing wrongful foreclosure claim because Plaintiffs did not fulfill their obligations under deeds of trust by making timely payments); *Roque v. SunTrust Mortg. Inc.*, Case No. C-09-00040 RMW, 2010 WL 546896, at *4 (N.D. Cal. Feb. 10, 2010) (dismissing wrongful foreclosure claim because plaintiff was "unable to assert that no breach of performance occurred").

loans when foreclosure began).  Here, as in *Green*, Plaintiff does not—and cannot—allege he is current on his mortgage payments.  Accordingly, his claim for wrongful foreclosure fails as a matter of law.  *See, e.g., Coward*, 2009 WL 3367398, at *9.  As in *Green*, Plaintiff does not allege facts stating the absence of a default with respect to his loan or affirmatively allege that he has paid according to the loan terms of his promissory note.  Plaintiff's wrongful foreclosure claim must therefore be dismissed.[7]

### 3.     Plaintiff Did Not Comply With The Tender Rule

Plaintiff's Third Cause of Action should also be dismissed because Plaintiff has not complied with the tender rule.  This rule requires plaintiffs who challenge the validity of a completed foreclosure action to tender the amount due and owing on the secured indebtedness as a prerequisite to maintaining the action.[8]  *See Abdallah v. United Savings Bank*, 43 Cal. App. 4th 1101, 1109 (Cal. Ct. App. 1996) (appellants required to allege tender of the amount of the secured indebtedness to challenge foreclosure sale); *U.S. Cold Storage of Cal. v. Great W. Sav. & Loan Ass'n*, 165 Cal. App. 3d 1214, 1222 (Cal. Ct. App. 1985) (the "law is long-established" that tender of the obligation in full

---

[7]  In his wrongful foreclosure claim and elsewhere, Plaintiff argues that the BAC Defendants willfully failed to properly review him for the federal Home Affordable Modification Program ("HAMP").  *See* Compl. p. 9, 16.  Even if this allegation were true, which it is not, it does not overcome the fact that no sale has taken place and Plaintiff's wrongful foreclosure claim fails as a matter of law.  Moreover, in *Manabat v. Sierra Pacific Mortg. Co., Inc.*, the plaintiff similarly premised her wrongful foreclosure claim on her argument that the defendants violated HAMP.  *See* Case No. CV F 10-1018 LJO JLT, 2010 WL 2574161, slip op. (E.D. Cal. June 25, 2010).  In granting MERS' and Chase's Motion to Dismiss, the *Manabat* Court concluded that there is no private right of action under HAMP.  *See* 2010 WL 2574161, slip op. at 11.  At least one court in this district has similarly concluded that a borrower does not have standing to sue for an alleged breach of HAMP.  *Vasquez v. Bank of America Home Loan*, 2:10-cv-00116-PMP-RJJ, Slip Op. at  2 (D. Nev. Aug. 23, 2010); *see also Benito v. Indymac Mortg. Servs.*, Case No. 2:09-CV-1218-PMP-PAL, 2010 WL 2130648 (D. Nev. May 21, 2010).  Similarly, case law in other jurisdictions uniformly holds that borrowers cannot sue participating mortgage servicers on the theory that they are intended beneficiaries under the HAMP participation agreements.  *See Burtzos v. Countrywide Home Loans*, Case No. 09-cv-2027, 2010 WL 2196068, at *2 (S.D. Cal. June 1, 2010); *Escobedo v. Countrywide Home Loans, Inc.*, Case No. 09cv1557, 2009 WL 4981618 (S.D. Cal. Dec. 15, 2009); *Mugica v. Aurora Loan Services LLC*, Case No. SACV 09-1086, 2009 WL 3467750, at *3 (C.D. Cal. Oct. 28, 2009); *Kamp v. Aurora Loan Services LLC*, Case No. SACV 09-00844, 2009 WL 3177636, at *4 (C.D. Cal. Oct. 1, 2009) (stating that argument that borrowers have rights under HAMP participation agreements is "nonsensical and baseless."); *Wells Fargo Bank v. Small*, 2010 N.Y. Slip Op. 30424(U) 2010 WL 835462 (N.Y. Sup. Ct. Feb. 16, 2010).

[8]  Although Nevada courts have not explicitly adopted the tender rule, they are likely to adhere to it because it is an outgrowth of the equitable maxim recognized in Nevada that a party seeking equity must do equity, and also because Nevada courts look to California law when Nevada law is silent, *Hiekel v. 268 Ltd.*, 887 F.2d 1089, 1989 (9th Cir. 1989), and California employs the tender rule.  Indeed, numerous District Courts within California have recently dismissed wrongful foreclosure claims because of a plaintiff's failure to tender the loan amount.  *See, e.g., Labra*, 2010 WL 889537, at *9 (dismissing wrongful foreclosure claim because of Plaintiff's failure to tender); *Somera v. Indymac Fed. Bank FSB*, Case No. 2:09-cv-01947-FCD-DAD, 2010 WL 761221, at *8-9 (E.D. Cal. Mar. 3, 2010) (same).

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

by a trustor is a "prerequisite to challenge of the foreclosure sale"); *Cagle v. Carlson*, 705 P.2d 1343, 1345 (Ariz. Ct. App. 1985) ("he who seeks equity must do equity;" because plaintiff was "legally and morally indebted" to defendant for the amount the property sold for in foreclosure sale, tender of that amount was a condition precedent to setting aside foreclosure sale) (internal quotation and citation omitted).  Plaintiff has not offered to tender to the Court or to the BAC Defendants amounts due and owing on his loan.  As a result, he cannot challenge the foreclosure sale and his wrongful foreclosure claim should be dismissed.  *See Keen v. Am. Home Mortg. Serv., Inc.*, Case No. Civ. 2-09-01026 FCD, 2009 WL 3380454, at *10-11 (E.D. Cal. Oct. 21, 2009) (plaintiff failed to allege "any facts supporting her ability to tender any payment" and "an immediate ability or willingness to tender payment").[9]

**E.   Plaintiff Cannot State a Claim for Conspiracy to Commit Fraud and Conversion or Conspiracy to Commit Fraud Related to the MERS System**

In his Fourth and Fifth Causes of Action, Plaintiff alleges that lenders and others conspired with each other and MERS to commit fraud by making so called "predatory loans" for which they knew Plaintiff was not qualified, and then used the MERS system in an effort to hide their allegedly illegal conduct and to sell and securitize these loans.  *See* Compl., ¶¶ 51-79 and 121.  These claims fail for numerous reasons.

In the familiar case of *Cervantes v. Countrywide Home Loans, Inc.*, the United States District Court for the District of Arizona rejected conspiracy allegations that were virtually identical to those raised here, concluding that they "do not arise to the level of fraud" for multiple reasons.  *Cervantes*, No. CV 09-517-PHX-JAT, 2009 WL 3157160, at *11 (D. Ariz. Sept. 24, 2009).  In particular, the *Cervantes* Court held that the plaintiffs did not state a tort claim because they had not alleged either (1) that they had been induced to enter into the loans based on any fact or statement or omission about MERS, or (2) that alleged representations or omissions about MERS had caused them to default on their loans.  *Id.*, 2009 WL 3157160, at *11.  Moreover, the *Cervantes* Court noted that the

---

[9]   In his wrongful foreclosure claim, Plaintiff also states that he is entitled to damages under 15 USC 1681.  However, Plaintiff wholly fails to explain the basis for this assertion or otherwise allege a claim under 15 USC 1681.  Under *Twombly*, any purported claim under 15 USC 1681 necessarily fails.

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1    plaintiffs' conspiracy claim provided none of the particularized details that are required when such

2    claims are asserted. *Id.*, at *11 (plaintiffs "ha[d] failed to provide any specific, factual allegations

3    inferring even a tacit agreement" among the defendants) (citing *Twombly,* 550 U.S. at 564-65).

4          In another recent case decided in January of 2010, Judge Edward Reed dismissed a

5    conspiracy to commit fraud and conversion claim that contained language similar to that contained

6    in Plaintiff's Complaint. *See Goodwin*, 3:09-cv-00306-ECR, slip op. at 24 (holding that allegations

7    of a conspiracy to "deprive Plaintiffs of their property through fraud and misrepresentation that

8    would result in Plaintiffs entering into loan agreements for which they were ultimately not qualified

9    and which would eventually result in Plaintiffs' inability to make payments and stay in their homes"

10   were not pled sufficiently to withstand dismissal.)  Here, Plaintiff's conspiracy claims are defective

11   for the same reasons as those at issue in *Cervantes* and *Goodwin* and must be dismissed.

12         **1.     Plaintiff Failed To Plead Conspiracy Properly**

13         Plaintiff's Fourth and Fifth Causes of Action warrant dismissal because they do not allege

14   sufficient facts to show the existence of any illegal agreement among the BAC Defendants.  Civil

15   conspiracy is a way to hold other parties liable for an underlying tort, not a stand-alone claim. *Paul*

16   *Steelman Ltd. v. HKS, Inc.*, No. 2:05-cv-01330-BES-RJJ, 2007 WL 295610, at *3 (D. Nev. Jan. 26,

17   2007) ("Civil conspiracy is not an independent cause of action-it must arise from some underlying

18   wrong.").   In order to establish a claim for conspiracy, Plaintiff must establish the following

19   elements: (1) BAC Defendants acted in concert; (2) BAC Defendants intended to accomplish an

20   unlawful objective for the purpose of harming Plaintiff; and (3) Plaintiff sustained damage resulting

21   from BAC Defendants' acts. *See Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 114 Nev.

22   1340, 971 P.2d 1251 (1999); *Jordan v. Nevada*, 121 Nev. 44, 74-75, 110 P.3d 30, 51 (Nev. 2005)

23   (conspiracy requires a "combination of two or more persons who, by some concerted action, intend

24   to accomplish an unlawful objective"), abrogated on other grounds by *Buzz Stew, LLC v. City of*

25   *North Las Vegas*, 181 P.3d 670 (Nev. 2008).

26         The essence of a conspiracy claim is the "agreement between the tortfeasors, whether explicit

27   or tacit." *In re Koonce*, 262 B.R. 850, 861 (Bankr. D. Nev. 2001).  To plead an adequate claim of

28

conspiracy to commit a tort, the plaintiff cannot simply state that a conspiracy exists. *Iqbal*, 129 S. Ct. at 1950 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."). Indeed, in civil conspiracy actions, the complaint must comply with the heightened pleading standard set forth in Fed. R. Civ. P. 9(b) and allege facts such as a "specific time, place, or person involved in the alleged conspiracies to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

Plaintiff alleges that Defendants "formed an association to conspire to deprive Plaintiff of his property through fraud and misrepresentation that would result in Plaintiff entering into loan agreements for which he was ultimately not qualified," that "Defendants intended that the Plaintiffs' [sic] loan would be packaged with other loans and sold on the secondary market," that "Defendants acted in a concerted manner to target Plaintiff as borrower, to misrepresent the loan terms and/or to misrepresent Plaintiff's qualification for the loans," that "Defendants . . . willfully and knowing[ly] conspire[d] and agree[d] among themselves to engage in a conspiracy to promote, encourage, facilitate, and actively engage in fraudulent and predatory lending practices . . . in participating in the MERS system," and that "the defendant conspirators, through the creation of MERS . . . adopted and implemented residential lending guidelines for use in Nevada and other states which were intended to, and did, generate unprecedented profits . . . at the expense of the Plaintiff and other persons who were fraudulently induced by the Defendant conspirators . . . into taking out loans that were known. . . . were likely to result in foreclosure of the loans." *See* Compl., ¶¶ 51, 52, 59, 65, and 71. These allegations are inadequate under Fed. R. Civ. P. 9(b). In particular, Plaintiff does not allege facts showing the requisite details under Rule 9(b) for a fraud-based conspiracy claim—"the who, what, when, where, and how" of the conspiracy. *See Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation omitted).

Plaintiff has not alleged sufficient facts to show the existence of any illegal agreement among the BAC Defendants—rather, Plaintiff baldly and repeatedly asserts that some nefarious conspiracy exists. "[A] conclusory allegation of agreement at some unidentified point does not supply facts

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX (702) 380-8572

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

adequate to show illegality. . . . [W]ithout some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557 (internal quotation omitted); *see also Kendall*, 518 F.3d at 1047-48 (affirming dismissal of conspiracy claim because the plaintiffs "pleaded only ultimate facts, such as conspiracy, and legal conclusions . . . [but] failed to plead the necessary evidentiary facts to support those conclusions"); *Duncan*, No. 3:09-cv-00632-RCJ-VPC, slip op. at 9-10 (dismissing civil conspiracy claim where plaintiffs did not allege an agreement); *Sieben*, No. 3:09-cv-00642-RCJ-VPC, slip op. at 9 (same). On this basis alone Plaintiff's conspiracy claim warrants dismissal.

### 2. Plaintiff Fails To Plead An Actionable Underlying Tort

Mere allegations of conspiracy are insufficient to state a conspiracy claim under Nevada law. Again, civil conspiracy is a way to hold other parties liable for an underlying tort, **not** a stand-alone claim. *Paul Steelman Ltd.*, 2007 WL 295610, at *3. Accordingly, Plaintiff cannot recover on his conspiracy claim without alleging the existence of an actionable underlying tort.

Here, Plaintiff makes not effort to, nor could he, state a fraud claim. Moreover, and as stated above, Plaintiff has not and cannot state a claim for wrongful foreclosure. Consequently, Plaintiff has failed to adequately allege the existence of an actionable underlying tort on which the conspiracy claim could be premised. Plaintiff's conspiracy claim requires dismissal with prejudice.

### 3. Courts Have Rejected Plaintiff's Attacks on MERS

Finally, the primary premise of Plaintiff's conspiracy claim—that the BAC Defendants' use of and membership in MERS is illegal—is simply wrong and unsupported.[10] Indeed, Plaintiff's assertion that MERS is unlawful has been repeatedly rejected by courts nationwide. In *Cervantes*, the District of Arizona noted that "[the] Plaintiffs . . . have not directed this Court to any Arizona case that finds that the MERS system is fraudulent." *Cervantes*, 2009 WL 3157160, at *10. Likewise, although frequently presented with this argument, no Nevada court has held that MERS and its members are engaged in any sort of fraudulent conspiracy. To the contrary, multiple judges

---

[10] Plaintiff unconvincingly asserts that the Defendants created and utilized MERS to advance unlawful lending practices. *See* Compl. ¶ 71. This allegation is wholly nonsensical, as MERS does not engage in any lending activities.

in the Nevada federal courts[11] and state courts[12] have had no difficulty holding that MERS has standing to foreclose and have approved MERS' role as a nominal beneficiary or mortgagee under a mortgage instrument.   This should be particularly true where, as here, MERS' role was plainly disclosed in the Foreclosing Deed of Trust that Plaintiff signed.[13]

As a final note, the *Cervantes* Court explained that even if Plaintiff was somehow correct in his fanciful allegation that MERS is a "sham," his claim would still be defective:

> Plaintiffs have failed to allege what effect, if any, listing the MERS system as a 'sham' beneficiary on the deed of trust had upon their obligations as borrowers. . .  Plaintiffs do not allege that they were somehow induced to enter into their loans on the basis that MERS was a genuine and not a 'sham' beneficiary.

*Cervantes*, 2009 WL 3157160, at *10.  In this case, Plaintiff likewise does not allege that he was "somehow induced" to enter into his loan on the basis that MERS was "genuine."  *See* Compl. ¶ 70. Thus, the same result reached in *Cervantes* should be reached here.  In addition, the District of

---

[11]  *Vasquez v. Aurora Loan Servs.*, Case No 2:08-cv-01800, slip op. at 2 (D. Nev. Apr. 21, 2009) (**Exhibit S**) (holding that the loan documents sufficiently demonstrated standing by Defendants, including MERS, "with respect to the loan and the foreclosure"); *Orzoff v. Mortg. Elec. Reg. Sys., Inc.*, Case No. 2:08-cv-01512, slip op. at 9-10 (D. Nev. Mar. 26, 2009) (**Exhibit T**) ("MERS does have standing [to participate in foreclosure proceedings as a nominee beneficiary]. . . . Courts around the country have held the same."); *Gonzalez v. Home Am. Mortg. Corp.*, Case No. 2:09-cv-00244, slip op. at 7-9 (D. Nev. Mar. 12, 2009) (**Exhibit U**) (upholding right of MERS and CR Title, as successor trustee, to initiate non-judicial foreclosure without presenting the note); *Ramos v. MERS, Inc.*, Case No. 2:08-cv-1089-ECR-RJJ, 2009 WL 5651132, at *3 (D. Nev. Mar. 5, 2009) ("[U]nder the deed of trust, MERS was empowered to foreclose on the property and to appoint [another defendant] as substitute trustee for purpose of conducting the foreclosure."); *Elias v. HomeEq Serv.*, No. 2:08-CV-1836 JCM (PAL), 2009 WL 481270, at *1 (D. Nev. Feb. 25, 2009) (same).

[12]  *Khalil v. Fidelity Nat'l Default Sol. Tustin*, Case No. A560582, slip. op. at 3 (Dist. Ct. Clark County Nov. 24, 2008) (**Exhibit V**) (recognizing that "MERS, as a lender's nominee and the named beneficiary [on the Deeds of Trust], ha[d] standing to foreclose").

[13]  The Foreclosing Deed of Trust lists MERS as the beneficiary and nominee of the lender. *See* Ex. K, p. 2. The Foreclosing Deed of Trust also states:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successor and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Ex. K, p. 3-4.  The Foreclosing Deed of Trust permits the lender to appoint a substitute trustee thereunder. *See Id.* ¶ 24. Further, the Foreclosing Deed of Trust allows the lender to foreclose on the property if Plaintiff does not make his loan payments. *Id.* ¶ 22.  Plaintiff agreed to the foregoing terms and should be held thereto.

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

Arizona rejected the idea that MERS is a "sham" beneficiary:

> [T]he Court fails to see how the MERS system commits a fraud upon Plaintiff. Plaintiff's argument that MERS is a 'sham' beneficiary is unconvincing. Otherwise, any situation where a beneficiary obtains less than the full rights possessed by the entity or person granting the beneficiary status would likewise result in a 'sham' beneficiary. The fact that MERS does not obtain such rights as to collect mortgage payments or obtain legal title to the property in the event of non-payment does not transform MERS' status into a 'sham.'

*Cervantes*, 2009 WL 3157160, at *10. Again, Plaintiff makes no allegations in this lawsuit that would alter the *Cervantes* Court's commonsense and appropriate conclusion. Nothing that Plaintiff alleges about MERS and its activities constitutes fraud, nor can Plaintiff establish that the BAC Defendants engaged in unfair lending practices, let alone conspired to engage in such unfair lending practices. The Court should dismiss the Fourth and Fifth Causes of Action.

## F.    Inspection and Accounting Is Not a Recognized Cause of Action in Nevada

Plaintiff's Sixth Cause of Action purports to be for inspection and accounting. This is not a recognized cause of action in Nevada and requires dismissal on that basis. In making this claim, Plaintiff seemingly seeks information regarding the servicing of his loan. If Plaintiff has specific questions about the servicing of his loan, he should seek that information in the manner allowed under federal law. However, inspection and accounting is not a cause of action, thus requiring dismissal of that claim with prejudice.[14]

## G.    Plaintiff's Unjust Enrichment Claim Is Barred by the Written Agreements

Plaintiff's Seventh Cause of Action purports to state a claim for unjust enrichment. *See* Compl, ¶¶ 90-94. This claim, however, fails as a matter of law. Indeed, it is well-established that no unjust enrichment claim can exist where there is a contract, such as a mortgage, governing the relationship between the parties.

As the Nevada Supreme Court has held: "An action based on a theory of unjust enrichment

---

[14] In making his purported inspection and accounting claim, Plaintiff may be attempting to assert a claim under RESPA. Indeed, Plaintiff maintains that he requested, but was not provided, certain information regarding the servicing of his loan. *See* Compl. ¶¶ 84-85. Even if Plaintiff had pled a RESPA claim, which he did not, the foregoing allegations could not plausibly state a RESPA cause of action. Indeed, Plaintiff wholly fails to allege that he requested specific information via a Qualified Written Request under 12 U.S.C. 2605.

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997) (per curiam). The doctrine of unjust enrichment thus only "applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]." *Id.* (quoting 66 AM. JUR. 2D RESTITUTION § 11 (1973)).

In the Complaint, Plaintiff admits that he entered into an express contract when he executed the deed of trust and note in connection with his loan. *See* Compl., ¶ 2. This Court has held that the existence of such contracts—including deeds of trust and notes—bars a plaintiff's claim for unjust enrichment. *See Hearne*, 3:08-CV-0500-ECR-RAM, slip op. at 10-11 ("Plaintiff's mortgages are express and written contracts; Plaintiff's [unjust enrichment] claim thus fails and will be dismissed."); *Lopez*, Case No. 3:09-cv-180, slip op. at 14-15 (dismissing Plaintiff's claims for unjust enrichment because the mortgages in question "are express and written contracts"); *Green,* Case No. 3:09-cv-374, slip op. at 6 (holding that "mortgages are express and written contracts; the doctrine of unjust enrichment therefore does not apply"); *Goodwin,* 2010 WL 234786, at *7-8 (D. Nev. 2010) (same).[15] Thus, Plaintiff has not stated a cognizable claim for unjust enrichment.

**H.    Quiet Title is Not Appropriate Where Plaintiff Admits He Encumbered The Property**

In his Eighth Cause of Action, Plaintiff seeks to quiet title. Plaintiff's quiet title claim should be dismissed because it is dependent on his other failed claims. But even if his other claims did not fail, quieting title is not a proper remedy in this case. "A quiet title claim requires a plaintiff to allege that the defendant is unlawfully asserting an adverse claim to title to real property." *Kemberling v. Ocwen Loan Servicing, LLC*, Case No. 2:09-cv-00567, 2009 WL 5039495, at *2 (D. Nev. Dec. 15, 2009). "The very object of the proceeding assumes that there are other claimants adverse to the Plaintiff, setting up titles and interests in the land or other subject-matter hostile to his [own]." *See Clay v. Scheeline Banking & Trust Co.*, 40 Nev. 9, 16, 159 P. 1081, 1082 (1916).

---

[15]    Numerous other Nevada courts have reached the same conclusion. *See, e.g., Crockett Myers v. Napier, Fitzgerald & Kirby*, 440 F. Supp. 2d 1184, 1197 (D. Nev. 2006); *Clark v. Metro. Life Ins. Co.*, Case No. 3:08-cv-158-LRH-VPC, 2009 WL 536830, at *6 (D. Nev. Mar. 3, 2009).

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1   Where such adverse claims exist, the party seeking to have another party's right to property

2   extinguished, bears the burden of overcoming the "presumption in favor of the record titleholder."

3   *See Breliant v. Preferred Corp.*, 112 Nev. 663, 669, 918 P.2d 314, 318 (1996); *see Clay*, 40 Nev. at

4   16, 159 P. at 1082.

5          Here, Plaintiff admits he borrowed money, and then secured the loan with a deed of trust.

6   *See, e.g.*, Compl. ¶ 2.  Plaintiff's Foreclosing Deed of Trust on the property describes MERS' role as

7   beneficiary and nominee of the lender.  *See* Ex. K, ¶ 24.  There is no other party claiming any

8   interest in Plaintiff's property that is adverse to Plaintiff's title and/or the Foreclosing Deed of Trust.

9   Plaintiff's dislike for the deed of trust he executed does not create an adverse claim that entitles him

10  to an order quieting title.[16]

11         The only way this quiet title action would be necessary is if there was presently a dispute

---

13    [16]  While Plaintiff does not make a slander of title claim, he alleges in his quiet title claim that the Notice of
14  Default constituted a libel of title.  *See* Compl. ¶ 97.  Even if Plaintiff had properly pled a slander of title claim, that
     claim would fail.  To state a slander of title claim, Plaintiff must allege a "false and malicious communication,
15  disparaging to [his] title in land, and causing special damage." *See Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 114 Nev.
     823, 842, 963 P.2d 465, 478 (1998); *Higgins v. Higgins*, 103 Nev. 443, 445, 744 P.2d 530, 531 (1987) (internal citations
16  omitted).  Plaintiff cannot validly allege the foregoing as he seemingly admits his default under the note.  *See* Compl. ¶
     90 ("Said payments would be paid when the note went into default as set forth above.").  In *Ramos v. Mortgage
17  Electronic Registrations System, Inc.*, the plaintiffs alleged that recorded notices of default slandered their title.  2009
     WL 5651132.  This Court dismissed that claim, noting:

18            Plaintiffs do not dispute that they were in default on their loan. Nor is it false that the
              property was to be sold at a trustee's sale. As noted above, Defendants were acting
19            within their authority under the Deed of Trust in conducting the foreclosure. It is not
              clear, therefore, what Plaintiffs might assert to be false or malicious about the recorded
20            notice. We conclude that Plaintiffs have failed to state a claim for slander of
              title.

21  2009 WL 5651132, at *4; *see also Saterbak v. MTC Fin. Inc.*, 2011 WL 484300, 2009 WL 5651132, slip op. (D. Nev.
22  Feb. 4, 2011) (dismissing slander of title claim arising from recordation of notice of default because the trustee had the
     authority to initiate the foreclosure process and because Plaintiff never alleged that she was not in default).  Courts
23  throughout the Ninth Circuit have embraced similar reasoning. *See In re: MERS Litigation*, MDL Docket No. 09-2119-
     JAT, 2010 WL 4038788 (D. Ariz. Sept. 30, 2010) ("Plaintiffs bring claims for slander of title . . . on the allegation that
24  certain defendants wrongfully recorded notices of default and intent to foreclose against Plaintiffs' property. . . . Here,
     Plaintiffs have not sufficiently alleged the falsity of these communications. . . . [because] there is no allegation that
25  Plaintiffs were not in default or that a trustee's sale was actually not scheduled. The only alleged falsity emerges from
     Plaintiffs' argument that the MERS recordation process splits the note from the deed of trust, renders the note
26  unenforceable, and thus all subsequent action-including these recordations-are invalid and false.").  Here, as in *Ramos*,
     *Saterbak*, and *In Re: MERS Litigation*, Plaintiff does not meaningfully deny his default under the note, but merely
27  implies that the BAC Defendants are not entitled to collect on Plaintiff's loan.  Thus, any purported slander of title claim
     fails.

28

1   between two or more parties over the right to foreclose under Plaintiff's Foreclosing Deed of Trust.

2   Plaintiff does not assert that more than one entity claims the right to foreclose on the Foreclosing

3   Deed of Trust, so Plaintiff's claim to quiet title has no merit.

4        Further, because an action to quiet title is equitable in nature, *see MacDonald v. Krause*, 77

5   Nev. 312, 317-18, 362 P.2d 724 (1961), Plaintiff must show his right to such equitable relief.  *See*

6   *Transaero Land & Dev. Co. v. Land Title Co. of Nev., Inc.*, 108 Nev. 997, 1001, 842 P.2d 716

7   (1992) ("[I]n seeking equity, a party is required to do equity.") (internal quotation omitted).  In this

8   case, Plaintiff voluntarily executed a promissory note and the Foreclosing Deed of Trust.  He has

9   failed to make the payments due on the loan, and now seeks to deprive his creditors of their security

10  by quieting title.  This would be an inequitable result.  Where a defaulting mortgagor or trustor

11  attempts to quiet title against the mortgagee, equity is served by requiring the debtor purporting to

12  quiet title to pay the full amount of the outstanding debt.  *See, e.g., Trusty v. Ray*, 249 P.2d 814

13  (Idaho 1951); *see also Mix v. Sodd*, 126 Cal. App. 3d 386, 390 (1981) (no quiet title action may lie

14  without paying the debt, even if debt is otherwise unenforceable).   This Court should reject

15  Plaintiff's attempt to obtain a windfall from his loan by eliminating the deed of trust.  Plaintiff's quiet

16  title claim should be dismissed.

17  **I.      Plaintiff's Breach of Good Faith and Fair Dealing Claim Is Baseless**

18       Plaintiff's Ninth Cause of Action is for Breach of Good Faith and Fair Dealing.  This claim is

19  devoid of merit.  A claim for breach of the covenant of good faith and fair dealing requires the

20  following:  (1) Plaintiff and BAC Defendants were parties to a contract; (2) BAC Defendants owed a

21  duty of good faith to Plaintiff; (3) BAC Defendants breached that duty by performing in manner that

22  was unfaithful to the purpose of the contract; and (4) Plaintiff's justified expectations were denied.

23  *See Perry v. Jordan,* 111 Nev. 943, 948, 900 P.2d 335, 338 (1995).  The implied duty of good faith

24  and fair dealing arises in all contracts.  *See A.C. Shaw Constr. v. Washoe County*, 105 Nev. 913, 914,

25  734 P.2d 9 (1989).  However, to be actionable, the breach must have occurred after the formation of

26  the contract, not before.  *See Centerville Builders, Inc., v. Wynne*, 683 A.2d 1340, 1342 (R.I. 1996)

27  (holding that the covenant of good faith and fair dealing "only applies after a binding contract is

28

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1   formed") (citing *Crellin Techs., Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 10 (1st Cir. 1994)).

2       At the outset, Plaintiff alleges that "Defendants had a duty to pay at least as much

3   consideration to plaintiff's financial interests as their own financial interests" and that "Defendants

4   had a duty to comply with all applicable laws of the State of Nevada and published HAMP

5   guidelines and requirements under the HAMP contracts." *See* Compl. ¶ 101.  Plaintiff's first

6   assertion is flawed as a matter of law, as it is well-settled (including in multiple decisions from this

7   District) that a lender or servicer owes no fiduciary duties to mortgage borrowers.   *Reed v.*

8   *Countrywide Bank*, FSB, Case No. 2:09-cv-00319, slip op. at 5, 6 (D. Nev. Mar. 23, 2009)

9   (mortgage lender owes no fiduciary duty to borrower, and no "exceptional circumstances" exist in

10  such a situation to give rise to a "special relationship") (attached at **Exhibit W**); *Hoskins v.*

11  *Countrywide Home Loans*, Case No. 2:09-cv-00166, slip op. at 2 (D. Nev. Mar. 18, 2009) (no

12  fiduciary duty between loan servicer and borrower) (attached as **Exhibit X**); *Yerington Ford, Inc., v.*

13  *GMAC*, 359 F. Supp. 2d 1075, 1089 (D. Nev. 2004), overruled on other grounds by *Giles v. GMAC*,

14  494 F.3d 865 (9th Cir. 2007); *Kwok v. CR Title Co., et al.*, Case No. 2:09-cv-2298, slip op. at 5 (D.

15  Nev. Jun. 23, 2010) (Hunt, R.) ("[A] lender owes no fiduciary duties to a borrower absent

16  exceptional circumstances.") (attached as **Exhibit Y**); *Saniel v. CR Title Co., et al.*, Case No. 2:09-

17  cv-02290, slip op. at 5 (D. Nev., Jun. 23, 2010) (Hunt, R.) (attached as **Exhibit Z**).

18      Plaintiff goes on to allege that the BAC Defendants breached the duty of good faith and fair

19  dealing by "[f]ailing to negotiate with Plaintiffs [sic] in good faith, after Plaintiffs requested

20  mortgage payment assistance under HAMP," "[f]ailing to properly identify whether borrowers meet

21  the minimum HAMP eligibility requirements . . . failing to offer modifications as required by HAMP

22  . . . [f]ailing to notify borrowers in writing of their determinations regarding the eligibility for

23  mortgage modifications and the reasons for those determinations . . . [initiating] new foreclosure

24  actions or continuing foreclosure actions that had previously been commenced against borrowers

25  who meet the minimum HAMP eligibility criteria . . . [f]ailing to suspend temporarily foreclosure

26  actions while borrowers who are not entitled to mortgage modifications are considered for

27  alternative prevention options . . . [and by f]ailing to attend mediation with 'true standing' to

28

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1    represent alleged lender parties under Nevada's foreclosure mediation program."[17]  *See* Compl. ¶

2    102.  Plaintiff further alleges that Defendants breached the implied covenant of good faith and fair

3    dealing by concealing the true terms of the loan, failing to explain that Plaintiff was not truly

4    qualified for his loan, and misrepresenting Plaintiff's ability to qualify for the loan.  *See* Compl. ¶¶

5    103-05.[18]  These allegations do not support a breach of the implied covenant of good faith and fair

6    dealing claim.[19]

7         Plaintiff's breach of the implied covenant of good faith and fair dealing claim necessarily

8    fails against ReconTrust and MERSCORP, as Plaintiff is not a party to a contract with either entity.

9    In the absence of a contractual relationship, a party cannot be liable for breaching the implied

10   covenant of good faith and fair dealing.  *See, e.g., Velasquez*, 2009 WL 2338852, at *9 (dismissing

11   implied covenant claim in part because facts showed no contractual relationship).

12        Moreover, Plaintiff cannot show that any of the BAC Defendants breached the implied

13   covenant of good faith and fair dealing by luring Plaintiff into the subject loan.  Prior to the

14   formation of a contract, there is no implied duty of good faith and fair dealing.  Even if a party could

15   be liable for breaching the implied contractual covenant before formation of the contract, **the BAC**

16   **Defendants played no part in any of the pre-contract negotiations.**

17

18        [17]  The majority of the foregoing allegations do not apply to Plaintiff in particular.  Rather, they seemingly allege widespread misconduct by the BAC Defendants, which Plaintiff does not have standing to challenge on behalf of

19   unknown and unnamed borrowers.  Moreover, Plaintiff makes general assertions about Defendants' alleged failure to appear at Nevada foreclosure mediations with authority and in good faith.  If Plaintiff participated in a foreclosure

20   mediation and would like to have its outcome reviewed, he must bring a petition for judicial review.  Indeed, the Amended Foreclosure Mediation Rules ("AFMR") expressly provide that the content of Nevada foreclosure mediations

21   is confidential and inadmissible in subsequent proceedings, except in a petition for judicial review properly commenced under the AFMR.  *See* AFMR 19.  Any reference to foreclosure mediations is improper and should be stricken.

     [18]  Plaintiff also appears to contend that the BAC Defendants violated the federal Truth in Lending Act

22   ("TILA") by, *inter alia*, failing to disclose material and true terms of the transaction.  *See* Compl. ¶¶ 104, 107.  Plaintiff, however, has failed to plead a cause of action under TILA.  Even if Plaintiff had attempted to state a cause of action

23   under TILA, any TILA claim is time-barred, as TILA contains a general statute of limitations for damages claims, *see* 15 U.S.C. § 1640(e), and a three year statute of limitations for rescission claims.  *See* 15 U.S.C. § 1635(f) (The right of

24   rescission pursuant to TILA "shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first. . . .").  Thus, Plaintiff was required to file any TILA damages claim against the

25   BAC Defendants by May of 2005, and any rescission claim by May 2007.

     [19]  Plaintiff also alleges that the BAC Defendants breached the duty of good faith and fair dealing by failing to

26   explain that they had no right to foreclose or collect under the note.  *See* Compl. ¶ 107.  As set forth in the preceding sections, BAC was the duly authorized servicer of the loan, and the foreclosure at issue has been wholly proper thus far.

27   Plaintiff's contention that the BAC Defendants breached the implied covenant of good faith and fair dealing by failing to inform Plaintiff that they had no right to foreclose is legally baseless and, in light of the propriety of the subject

28   foreclosure, nonsensical.

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

1   Further, Plaintiff pleads no facts that, if proven, would establish that BAC Defendants

2   contravened the spirit of the contract.  While Plaintiff apparently believes that the BAC Defendants

3   breached the duty of good faith and fair dealing by allegedly failing to review him for HAMP or

4   otherwise comply with HAMP guidelines, Plaintiff cannot make this claim as a matter of law

5   because there is no private right of action under HAMP.  *Manabat*, 2010 WL 2574161, slip op. at

6   11.  Notably, at least two courts in this District have concluded that a borrower does not have

7   standing to sue for an alleged breach of HAMP.  *See Sena v. Bank of America Home Loans, et al.*,

8   2:10-CV-00947-KJD-LRL, slip. op. at 5 (D. Nev. March 30, 2011) (attached as **Exhibit aa**);

9   *Vasquez*, 2:10-cv-00116-PMP-RJJ, Slip Op. at  2; *see also Benito*, Case No. 2:09-CV-1218-PMP-

10  PAL.  Similarly, case law in other jurisdictions uniformly holds that borrowers cannot sue

11  participating mortgage servicers on the theory that they are intended beneficiaries under the HAMP

12  participation agreements.  *See Burtzos*, 2010 WL 2196068, at *2; *Escobedo*, 2009 WL 4981618;

13  *Mugica*, 2009 WL 3467750, at *3; *Kamp*, 2009 WL 3177636, at *4 (C.D. Cal. Oct. 1, 2009) (stating

14  that argument that borrowers have rights under HAMP participation agreements is "nonsensical and

15  baseless."); *Small*, 2010 WL 835462.

16  Even if Plaintiff had standing to sue under HAMP, his HAMP arguments would warrant

17  dismissal.  Indeed, Plaintiff's HAMP arguments contain little more than rote, conclusory statements

18  and are devoid of details specific to the transaction at issue.  Notably, Plaintiff does not allege, even

19  generally, that he was qualified for HAMP, that he submitted documentation to be analyzed for

20  HAMP, or that he even desires a HAMP modification.  Lenders owe no duty to automatically grant

21  borrowers a loan modification, *see, e.g.*, *Sam v. Am. Home Mortg. Servicing, Inc.*, Case No. 2:09-cv-

22  2177, 2010 WL 761228, at *6 (E.D. Cal. March 3, 2010), and Plaintiff does not and cannot explain

23  why he met the criteria for modification assistance in this case.

24  Plaintiff has failed to state a breach of the implied covenant of good faith and fair dealing

25  claim upon which relief can be granted.  Indeed, Plaintiff's breach of the implied covenant of good

26  faith and fair dealing claim is based upon allegations that Plaintiff has no standing to make and/or

27  legal duties that simply do not exist under Nevada law.  That claim warrants dismissal with

28

{LV027126;1}                                             24

1  prejudice.

2  **J.  The "Claims" for Injunctive Relief, Declaratory Relief, and Rescission Fail as a Matter**
3  **of Law**

4      Plaintiff's Tenth, Eleventh and Twelfth Causes of Action for injunctive relief, declaratory

5  relief, and rescission fail for two reasons.  First, as this Court has previously recognized, each of

6  these "claims" is actually a remedy, and not a cause of action that states a legal claim.  *Aguilar*, 2010

7  WL 185951, at *4; *Goodwin*, 3:09-cv-00306-ECR, slip op. at 10 (injunctive and declaratory relief);

8  *Dalton*, No. 3:09-cv-00534-LDG-VPC (injunctive and declaratory relief).  For that reason alone,

9  each "claim" should be dismissed.  *See also Josephson v. EMC Mortg. Corp.*, No. 2:10-CV-336

10  JCM (PAL), 2010 WL 4810715, at *3 (D. Nev. Nov. 19, 2010) ("[I]t is well established that

11  injunctive relief is a remedy, and not an independent cause of action . . . Declaratory relief is a form

12  of relief which is not intended to furnish the plaintiffs with a second cause of action for the

13  determination of identical issues.") (internal citations and modifications omitted).

14      Second, these "claims" are entirely derivative of Plaintiff's other causes of action.  Because

15  those causes of action fail for all of the reasons explained above, so too do Plaintiff's claims for

16  injunctive relief, declaratory relief and rescission.  *See Duncan*, No. 3:09-cv-00632-RCJ-VPC, slip

17  op. at 9 ("Because the underlying causes of action will be dismissed, these causes of action will also

18  be dismissed."); *Sieben*, No. 3:09-cv-00642-RCJ-VPC, slip op. at 9 (same).[20]

19

20

---

21      [20]  In his Declaratory Relief claim, Plaintiff appears to contend that the BAC Defendants violated TILA.  *See*
22  Compl. ¶ 119.  Plaintiff, however, has failed to plead a cause of action under TILA.  Even if Plaintiff had attempted to
state a cause of action under TILA, that claim would fail for several reasons.  First, none of the BAC Defendants was
23  Plaintiff's lender.  As a result, any claims that Plaintiff attempts to state against the BAC Defendants regarding alleged
TILA violations at origination of the loan are misplaced, particularly where there is no alleged basis for finding assignee
24  liability.  Second, any TILA claim is time-barred.  TILA contains a one year statute of limitations for damages claims.
*See* 15 U.S.C. § 1640(e) ("Any action under this section may be brought in any United States district court . . . within one
25  year from the date of the occurrence of the violation.").  "The date of the violation refers to the date 'the loan documents
were signed.'" *Lynch v. RKS Mortg. Inc.*, 588 F. Supp. 2d 1254, 1259 (E.D. Cal. 2008) (quoting *Meyer v. Ameriquest*
26  *Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003)).  TILA also contains a three year statute of limitations for rescission
claims.  *See* 15 U.S.C. § 1635(f) (The right of rescission pursuant to TILA "shall expire three years after the date of
27  consummation of the transaction or upon the sale of the property, whichever occurs first. . . .").  Thus, Plaintiff was
required to file any TILA damages claim against the BAC Defendants by May of 2005, and any rescission claim by May
28  2007.

**AKERMAN SENTERFITT LLP**
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX: (702) 380-8572

# V.

## CONCLUSION

For the reasons stated above, the BAC Defendants request that this Court dismiss each of Plaintiff's claims and the Complaint with prejudice. Further, BAC Defendants also request that this Court issue an order expunging the *lis pendens* that Plaintiff recorded in connection with this lawsuit.

DATED this  13th day of April, 2011.

AKERMAN SENTERFITT LLP

  /s/  Christina S. Bhirud
ARIEL E. STERN
Nevada Bar No. 8276
JACOB D. BUNDICK
Nevada Bar No. 9772
CHRISTINA S. BHIRUD
Nevada Bar No. 11462
400 South Fourth Street, Suite 450
Las Vegas, Nevada 89101

*Attorneys for Defendants BAC Home Loans Servicing, LP, incorrectly sued as Bank of America Home Loans Servicing, LP; ReconTrust Company, N.A., incorrectly sued as ReconTrust Company; Mortgage Electronic Registration System, Inc., and MERSCORP, INC.*

AKERMAN SENTERFITT LLP
400 SOUTH FOURTH STREET, SUITE 450
LAS VEGAS, NEVADA 89101
TEL.: (702) 634-5000 – FAX (702) 380-8572

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on the 13th day of April, 2011 and pursuant to FRCP 5, I served

via CM/ECF and/or deposited for mailing in the U.S. Mail a true and correct copy of the foregoing

**MOTION TO DISMISS**, postage prepaid and addressed to:

MARK A. ADAIR
1401 Marbella Ridge Ct.
Las Vegas, NV  89117

*Plaintiff in pro per*

/s/  Elizabeth Stessel
An employee of AKERMAN SENTERFITT LLP